FILED
2018 Oct-16  AM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**


EDUCATION CORPORATION OF AMERICA,
VIRGINIA COLLEGE, LLC, and NEW
ENGLAND COLLEGE OF BUSINESS AND
FINANCE, LLC,

                  **Plaintiffs,**

         **v.**

UNITED STATES DEPARTMENT OF
EDUCATION, and BETSY DEVOS, in her
official capacity as Secretary of Education,

                  **Defendants.**

Civil Action No._____

## ORDER APPOINTING RECEIVER AND FOR INJUNCTIVE RELIEF

This cause coming before the Court on the Emergency Motion for Appointment of General Receiver and Injunction (the "Motion")[1] filed by PLAINTIFFS EDUCATION CORPORATION OF AMERICA, VIRGINIA COLLEGE, LLC and NEW ENGLAND COLLEGE OF BUSINESS AND FINANCE, LLC (collectively, "ECA" or "Plaintiffs" or "Debtors").  The Court, being fully advised in the premises and having jurisdiction in this matter, and upon consideration of the Declarations of Mike Ranchino of ECA and Sean M. Harding of FTI Consulting, Inc., [and upon consideration of any and all objections to the relief sought in the Motion; and after a hearing on _____, 2018 to consider the relief sought in the Motion;] and after due deliberation and sufficient cause appearing for the relief sought in the Motion; the Court hereby ORDERS that the Motion is GRANTED. The Court further finds and concludes[2] that, in accordance with Rule 65 and Rule 66 of the Federal Rules of Civil Procedure (the "Rules"):

---

[1] Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] To the extent any portion of these findings constitute a ruling of law, such portion shall constitute this Court's ruling with respect to the matters so-stated.

The Court has subject matter jurisdiction under U.S. CONST., art. III, § 2 and 28 U.S.C. § 1331, because this action involves the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1001 et seq. and 34 C.F.R. § 600.31(a)(1).  The HEA provides that federal courts have subject matter jurisdiction over actions against the United States Department of Education ("Department") and the Secretary of Education.  The Court has ancillary jurisdiction over the request to appoint a receiver and for an injunction, because such relief is substantially related to the claim raising a federal question and bears a logical relationship to the aggregate core of operative facts surrounding the federal question.

Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events giving rise to this action took place in this judicial district and a substantial part of property that is the subject of the action is situated in this judicial district.  Plaintiffs employ approximately 475 Alabama residents and their Alabama institutions have enrolled in excess of 1,200 active students.

The Court finds good cause to grant the injunctive relief set forth in this Order because Plaintiffs have demonstrated a substantial likelihood of success on the merits; that they will suffer irreparable injury if the injunction is not granted; the injunction will not substantially injure other interested parties; and the injunction will further the public interest.

Furthermore, the Court finds good cause to appoint a receiver because Plaintiffs have demonstrated that there is an imminent danger of damage to the Business (defined below) and its stakeholders; the Plaintiffs' available legal remedies are inadequate to protect their interests and the interests of other stakeholders; the probability of harm to the Plaintiffs and other stakeholders by denial of the appointment of a receiver is greater than the injury to the parties opposing appointment; Plaintiffs have demonstrated a substantial likelihood of success on the merits and

possible irreparable injury to the interests of Plaintiffs and other stakeholders in the Business; and Plaintiffs have demonstrated that the interests of Plaintiffs and other stakeholders will be protected and well served by the receivership.

There is ample support in the record that a receiver is necessary to keep, preserve and protect the business, business interests and property of Debtors for the benefit of Debtors' creditors, students and other stakeholders. Multiple actions against the Debtors and the Business have been threatened or are pending, which has a likelihood of materially impairing the value of the Business, the Debtors' ability to restructure the Business and the interests of students in completing their educational goals. The injunction and appointment of a receiver is necessary to keep, preserve and protect the Business for the benefit of ECA's schools, students, employees, creditors and other stakeholders.

Sean M. Harding of FTI Consulting is qualified to serve as receiver of the Business.

Pursuant to the forgoing finding and conclusions, the Motion and the record before the Court, good and sufficient cause appearing for the relief sought in the Motion, the Court's inherent equitable powers and 28 U.S.C. § 1651:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that **Sean M. Harding of FTI Consulting, Inc.** ("Receiver") is hereby appointed Receiver with respect to all the business, business interests and property of ECA, wherever located, by whomsoever held, without limitation (the "Receivership Property"), which shall hereby be vested in a Receivership Estate. Receiver shall provide this Court with his written oath and acceptance to faithfully perform his duties set forth in this Order. The Receiver shall make, execute and deliver to the Clerk of this Court a bond in substantially the form attached hereto as **Exhibit 1** in the sum of

Ten Thousand and No/100 Dollars ($10,000.00), within five (5) business days after the date of this Order.

The Receiver shall take immediate possession of the Receivership Property and shall have the full power and authority to exercise the usual and customary powers afforded to a receiver under federal common law (except as otherwise limited by an order of this Court), including, but not limited to, the following powers:

(1)      To operate ECA's business (the "Business") and the Receivership Property in the ordinary course and in compliance with applicable laws, regulations and rules, with a primary focus on financing of the business and other restructuring or sale transactions, with the delivery of academic services continuing to be performed by ECA's current management as overseen by the Receiver and ECA's current boards (including the independent board of New England College of Business and Finance, LLC ("NECB")); provided, however, that the Receiver shall have full power and authority to exercise management and control over the Receivership Property and the Business. The Receiver is authorized to incur and pay expenses incidental to the Receiver's preservation and use of the Receivership Property, and otherwise in the performance of the Receiver's duties, including, upon application to this Court for approval, the power to pay obligations incurred prior to the Receiver's appointment if and to the extent that payment is determined by the Receiver to be prudent in order to preserve the value of Receivership Property;

(2)      To do all the things that the board and management of ECA may do in the exercise of ordinary business judgment, or in the ordinary course of the operation of the Business and/or the Receivership Property as a going concern or use of the property subject to the general scope in sub-paragraph 1 above, including, but not limited to, cooperation with the Plaintiffs' boards with respect to any operational decisions; the continued retention of ECA's management and employees; the maintenance of regulatory and accreditation approvals for all schools owned by ECA or its subsidiaries, including without limitation fully complying with NECHE's accrediting standards applicable to NECB's operations and with ACICS's accrediting standards applicable to all other ECA institutions; the collection of all accounts, incomes, profits and other revenues of the Business and/or the Receivership Property, the purchase and sale of goods or services in the ordinary course of such Business and/or the Receivership Property, the incurrence of unsecured trade debt and payment of expenses of the Business or Receivership Property in the ordinary course; and, upon application to this Court for approval, the implementation of any key employee retention

or incentive plan that the Receiver determines to be necessary or beneficial to the Receivership Estate;

(3)     To maintain any and all existing bank accounts and accounts containing or evidencing securities, funds or cash equivalents, including without limitation deposit and checking accounts, or to open new bank accounts using ECA's tax identification numbers in the convenience of the Receiver and for the benefit of the Receivership Estate;

(4)     To assert any rights, claims, or choses in action of ECA (except to the extent that the rights, claims, or choses in action have been released prior to the commencement of these proceedings) that are Receivership Property or related thereto, to maintain in the Receiver's name or in the name of ECA any action to enforce any right, claim, or chose in action, and to intervene in actions in which ECA is a party for the purpose of exercising the powers under this Order;

(5)     To intervene in, remove, and/or transfer to this Court any action in which a claim is asserted against ECA or any actual or purported guarantor of a real property lease involving ECA or any ECA affiliate, whether such claim is a direct or a derivative claim or the subject of any claim to which any party to such other proceeding holds or asserts any right of indemnification, reimbursement or contribution against ECA, for the purpose of prosecuting or defending the claim and requesting the transfer of venue of the action to this Court, except that this Order does not transfer actions in which a state agency is a party and as to which such state is exercising its police or regulatory powers;

(6)     To assert rights, claims, or choses in action of the Receiver arising out of transactions in which the Receiver is a participant;

(7)     To pursue in the name of the Receiver for the benefit of the Receivership Estate any claim that may be asserted by any creditor of ECA, if pursuit of the claim is determined by the Receiver to be appropriate in the exercise of the Receiver's business judgment;

(8)     To seek and obtain advice or instruction from the Court with respect to any course of action in which the Receiver is uncertain in the exercise of the Receiver's powers or the discharge of the Receiver's duties;

(9)     To obtain appraisals with respect to Receivership Property;

(10)   To compel by subpoena any person to submit to an examination under oath, in the manner of a deposition in accordance with the Federal Rules of Civil Procedure, with respect to Receivership Property or any other matter that may affect or relate to the administration of the Receivership Estate;

(11)   To use, sell, or lease Receivership Property other than in the ordinary course of business, whether as a whole or in parts, as a going concern or otherwise, and to execute such documents, conveyances, and consents as may be required in connection therewith upon application to this Court for approval, and in connection with the exercise of any such powers or authorities as this Court may direct to seek direction from the Court with respect to approval of marketing and notice procedures, to affirm the agreement between ECA and Hilco Real Estate, LLC concerning real estate consulting services and pay the agreed upon compensation to Hilco Real Estate, LLC following approval by this Court, to market and sell ECA's assets to affirm the retention agreement between ECA and Parchman, Vaughan & Company, L.L.C. as investment banker without further order of this Court and pay the agreed upon compensation to Parchman, Vaughan & Company, L.L.C. following approval by this Court, and to seek further orders of this Court authorizing the sale of all or any such assets free and clear of all claims, liens, encumbrances and rights of others;

(12)   To obtain credit and other financial accommodations, grant liens, and grant adequate protection that in the Receiver's business judgment is beneficial to the Receivership Estate upon application to this Court for approval;

(13)   To seek employment of one or more attorneys, accountants, appraisers, auctioneers, or other professional persons who do not hold or represent an interest adverse to the Receivership Estate to represent or assist the Receiver in carrying out the Receiver's duties; provided, however: (a) the Receiver is hereby authorized to retain Cooley, LLP as regulatory counsel and to honor ECA's payment arrangements with Cooley for fees incurred in its representation of ECA; (b) the Receiver is hereby authorized to retain counsel pursuant to an engagement letter in form and substance satisfactory to the Receiver; and (c) the Receiver is hereby authorized to retain FTI Consulting, Inc., as financial advisor to the Receiver pursuant to an engagement letter in form and substance satisfactory to FTI Consulting, Inc. and the Receiver;

(14)   To disavow, reject, impair or terminate any contract, agreement, understanding, lease or occupancy agreement in or to which ECA is a party that in the Receiver's business judgment is burdensome or is of inconsequential value to the Receivership Estate, provided, however, the Receiver will not have authority to disavow, reject or terminate ECA's contractual indemnification obligations;

(15)   To enforce any contract, agreement, understanding, lease or occupancy agreement in or to which ECA is a party and to affirm, and affirm and assign, any contract, agreement, understanding, lease or occupancy agreement in or to which ECA is a party that in the Receiver's business judgment is beneficial to the Receivership Estate; provided, however, the Receiver and his successor(s) shall not: (i) extend, transfer or assign any

6

actual or purported guaranty of any obligations under real property leases to which ECA or any affiliate is a party without the actual or purported guarantor's prior written consent; or (ii) extend or modify any lease or occupancy agreement that is guaranteed by Kaplan, Inc. or its affiliates without the prior written consent of Kaplan, Inc. or its affiliates.

(16)    Maintain adequate insurance over the Business and the Receivership Property to the same extent and in the same manner as it has heretofore been insured, or as in the judgment of the Receiver, to cause all presently existing policies to be amended by adding the Receiver and the Receivership Estate as additional insureds and loss payees, with all refunds and claims proceeds to be paid to the Receiver as part of the Receivership Estate.

(17)    To take any and all acts as may be necessary to conclude this receivership; and

(18)    All other powers as may be conferred upon the Receiver specifically by statute, Court rule, or the Court.

**IT IS FURTHER ORDERED** that, during the pendency of the receivership, the Receiver shall prepare on a monthly basis, beginning sixty (60) days after the entry of this Order, reports setting forth all receipts and disbursements, cash flow, changes in the assets in his charge, claims against the assets in his charge, and other relevant issues and actions that have occurred during the prior month. The Receiver shall file such reports with the Clerk of Court within 30 days after the first calendar day of each month.

**IT IS FURTHER ORDERED** that ECA shall provide access to all employees of ECA and deliver or cause to be delivered to the Receiver upon the date of entry of this Order: all keys and other means of accessing the Receivership Property; original signed leases (or copies of such agreements where originals are unavailable); accounting records, including, without limitation, those identifying accounts receivable and payable; originals of agreements with vendors and service providers (or copies of such agreements where originals are unavailable), correspondence files with vendors and service providers; all documentation relating to the maintenance and operation of the property, including, without limitation, operating manuals,

building plans and the like; and all bank accounts and accounts containing or evidencing securities, funds or cash equivalents, including, without limitation, deposit and checking accounts.  To the extent that any of the foregoing information is accessible and stored electronically, ECA shall preserve such information and make same accessible to the Receiver. The disclosure of any documents or materials by ECA to the Receiver shall not breach any confidentiality obligation of ECA or waive the attorney-client privilege, work product privilege or any other confidentiality right or privilege, including any common interest privileges, that may exist in favor of ECA and, unless and until further order of this Court, ECA shall retain the right to assert any privilege against any third party.

**IT IS FURTHER ORDERED** that, upon immediate entry of this Order, other than in the furtherance of the implementation of this Order or at the direction of the Receiver, ECA and each of its directors, officers, agents, employees, managers and all other interested persons are enjoined from managing, interfering with, transferring, selling, disposing or dissipating the property of the Receivership Estate, including, but not limited to, accounts receivable, and are further enjoined from taking any actions that would, directly or indirectly, have an adverse impact on the value of the Receivership Estate.

**IT IS FURTHER ORDERED** that, from the time and date of this Order, a stay of any actions asserting claims or other rights and remedies against Plaintiffs, any affiliate of Plaintiffs, and/or any actual or purported guarantor that has indemnity rights against any Plaintiff (whether any Plaintiff or affiliated entity is initially named in the suit or not), including enforcing, attaching or perfecting liens against property of ECA or any such guarantor, is in effect, enjoining:

(1)    The commencement or continuation, including the issuance, employment, or service of process, of a judicial, administrative, or other action or proceeding against ECA or any schools owned directly or indirectly by ECA that was or could have been commenced before the entry of the order of appointment to recover a claim against the Debtors that arose before the entry of the order of appointment;

(2)    The commencement or continuation of any action against any actual or purported guarantor of any lease where any Plaintiff or affiliated entity is the tenant, obligor or lessee on the lease, and where any Plaintiff has agreed to indemnify such guarantor for any claims related to such lease;

(3)    The enforcement or levy against ECA or any Receivership Property of a judgment obtained before the order of appointment;

(4)    Any act to obtain possession of Receivership Property from the Receiver or to interfere with or exercise control, over, Receivership Property;

(5)    Any act to create, perfect, or enforce any lien or claim against Receivership Property except by exercise of a right of setoff, to the extent that the lien secures a claim against the Debtors that arose before the entry of the order of appointment; or

(6)    Any act to collect, assess, or recover a claim against the Debtors that arose before the entry of the order of appointment; provided, however, nothing herein shall be construed to enjoin or otherwise interfere with the Department's or any accrediting agency's supervision of ECA and enforcement of applicable rules and regulations. The injunction ordered by the Court in this Order is a [temporary][preliminary] injunction [schedule a further hearing and service of notice].

For clarity, if any party asserts a claim against an actual or purported guarantor of a real property lease involving any Plaintiff or affiliated entity in violation of the above stay, the Receiver may intervene in such action to enforce the stay and/or seek to remove or transfer the action to this Court.  This Order does not prohibit any actual or purported guarantor named in any such action from asserting a claim against ECA for indemnification or other relief.

**IT IS FURTHER ORDERED** that (i) the NECB board may employ separate counsel to assist the NECB in connection with, inter alia, compliance with the terms of this Order and dealing with the impact of the Order on its operations, and (ii) any professionals employed by ECA and the NECB board shall periodically be allowed and paid a fee for services and out-of-pocket expenses upon application therefor to the Court and Court approval of the same, as set forth below in more detail.

**IT IS FURTHER ORDERED** that any debts, liabilities, obligations, claims for relief, or other adverse actions incurred by or asserted against the Receiver or the Receivership Estate arising out of or in the course of this receivership, including without limitation, related to the operation and management of the Business, the administration of the Title IV federal student financial assistance programs, or the teach-out of those certain Teach-Out Schools (as defined in the Motion), whether in the name of the Receiver or ECA, shall be the debt, liability, obligation or otherwise the responsibility of the Receivership Estate only and not of the Receiver individually or Receiver's employer, FTI Consulting, Inc., or any officer, director, stockholder, attorney, employee or agent of FTI Consulting, Inc. or the Receiver. The sole recourse of Defendants, or any other federal, state, or local jurisdiction or governmental agency, or any accrediting agency or any other individual for any claim asserting, or arising out of, a violation by Receiver, ECA, or the Teach-Out Schools of laws, regulations, standards, or common law

shall be against the Receivership Estate, and neither Receiver, FTI Consulting, Inc., nor any officer, director, stockholder, attorney, employee or agent of FTI Consulting, Inc. or the Receiver, shall have any liability associated with such debt, liability, obligation, claim for relief, negative administrative action, or other adverse action, unless a Court of competent jurisdiction determines that any such claim is the result of fraud, gross negligence or the willful misconduct of any such party.

 **IT IS FURTHER ORDERED** that the Receiver may resign and be discharged of his responsibilities at any time by giving thirty (30) days' prior written notice to this Court; provided however, that the Receiver may petition the Court to approve such resignation and discharge upon shorter notice for good cause shown.

 **IT IS FURTHER ORDERED** that, notwithstanding anything herein to the contrary, the Receiver has no power or authority to file or authorize the filing of: (i) a petition for relief by or against the Debtors under 11 U.S.C. 101, et seq. (the "Bankruptcy Code"); (ii) any other action that would constitute a "change of control" under applicable laws or regulations. All power and authority to initiate and file any petition for relief under the Bankruptcy Code, or take any action with respect thereto, shall remain vested solely in the Debtors and their affiliates. In the event of an involuntary filing of a petition or any equivalent thereof against the Debtors or their affiliates under the Bankruptcy Code, Receiver shall support the decisions and comply with the directions of Debtors and their affiliates with respect to such involuntary petition, including without limitation, any contest by Debtors or their affiliates to such involuntary petition.

 **IT IS FURTHER ORDERED** that the Receiver shall not be deemed by Defendants or any other party or entity, now or at any point in the future, to exercise, or have exercised "substantial control," as that term is defined in 20 U.S.C. § 1099c and 34 C.F.R. § 668.174, over ECA, the Business, the Receivership Estate, or the Receivership Property based on Receiver's

11

appointment by this Court or subsequent involvement in the operation and management of the Business and/or the Receivership Property.

**IT IS FURTHER ORDERED** that the Receiver, FTI Consulting, Inc., and each of their employees, attorneys, shareholders, affiliates, subsidiaries, officers, directors, principals, and agents (collectively, the "Receiver Parties") shall have no liability for any and all claims, liabilities, damages, fees, costs, expenses and charges incurred or arising from their respective acts or omissions in connection with ECA, this Order, the Receivership Property, the Business or the Receivership Estate (collectively, the "Related Matters"), except to the extent that this Court determines by a final judgment (subject to any right of appeal) that such acts or omissions resulted from their willful misconduct, bad faith, gross negligence or fraud.  The Receiver Parties shall be held harmless and indemnified by the Receivership Estate for any losses, claims, damages, liabilities and expenses (including attorneys' fees, disbursements and expenses) that any Receiver Party may incur or to which any Receiver Party may become subject in connection with any action, suit, proceeding or investigation brought or threatened against such Receiver Party over an issue arising out of or related to the Related Matters; provided, however, that such indemnity shall not apply to with respect to a Receiver Party to the extent that such indemnification claim arises out of such Receiver Party's actions that are determined by a final order of this Court to be willful misconduct, bad faith, gross negligence or fraud.  In the event that, at any time whether before or after termination or resignation of the Receiver, as a result of or in connection with the Related Matters, any Receiver Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or the Receiver or any other Receiver Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Receiver Party's possession or control pursuant to a subpoena or other legal

(including administrative) process, the Receiver Party will be reimbursed by and from the Receivership Estate for its out of pocket expenses, including the reasonable fees and expenses of its counsel.  This Section shall survive the termination or resignation of Receiver, and the termination or suspension of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver, its consultants, agents, legal counsel, and other professionals, as well as professionals employed by ECA and the NECB board, shall be paid on a monthly basis.  Receiver is authorized to pay and/or reimburse itself from the Receivership Property reasonable receiver fees of $800 per hour and for its reasonable monthly expenses. Receiver also is authorized to pay and reimburse its consultants, agents, legal counsel, and other professionals, as well as professionals employed by ECA and the NECB board, from the Receivership Property, for reasonable professional fees and expenses. To be paid on a monthly basis, the Receiver and each professional must file a statement of account with the Court and serve a copy on the Defendants and the Plaintiffs each month for the fees and reasonable monthly expenses incurred in the preceding calendar month.  If no objection thereto is filed and served on or within five (5) days following service thereof, such statement of account shall be paid no later than five (5) days after the expiration of the applicable objection deadline. If an objection is timely filed and served, the portion of such statement of account that is subject to an objection shall not be paid absent further order of the Court; provided, however, that the portion of such statement of account that is not subject to an objection shall be paid within five (5) days after the expiration of the applicable objection deadline.  In the event objections are timely made to fees and expenses, the objected to portion of the fees and expenses will be paid within five (5) days of an agreement among the parties or entry of a Court order adjudicating the matter.

**IT IS FURTHER ORDERED** that the Receiver shall apply all income received by the Receivership Estate in the following order and priority:

1. On a monthly basis, the Receiver's fees and reasonable out-of-pocket expenses;

2. On a monthly basis, the fees and reasonable out-of-pocket expenses of the Receiver's consultants, agents, legal counsel and other professionals, as well as professionals employed by ECA and the NECB board;

3. The current expenses relating to the Receivership Estate accruing after the date hereof;

4. All other expenses necessary to maintain, preserve, and protect the property of the Receivership Estate.

**IT IS FURTHER ORDERED** that this Order shall not be deemed by any federal, state, or local governmental agency, or any accrediting agency, as having triggered a substantive change or change of ownership or control requiring the approval of such agency; further, the actions taken by Receiver during the course of this receivership shall not be taken into account by any such agency in any future determination of whether Receiver is qualified to own, or serve in any capacity with, an institution approved or regulated by that agency.

**IT IS FURTHER ORDERED** that the United States Marshall Service's assistance to enforce the terms of this Order in the form of peace-keeping duties is hereby authorized.

**IT IS FURTHER ORDERED** that the receivership established pursuant to this Order shall remain in effect until further order of this Court and until the receivership is terminated, the Court retains jurisdiction over this matter to (i) amend, supplement or delete any provisions of this Order; (ii) enforce compliance with or punish violations of this Order; (iii) interpret any

14

provision of, and resolve all disputes with respect to, this Order; and (iv) order any additional actions or remedies as may be reasonably necessary or appropriate.

       **IT IS FURTHER ORDERED** that the reversal or modification on appeal of this Order shall not affect the validity or any actions taken in good faith by the Receiver, the payment of compensation to which the Receiver and any professional is entitled, or the payment of expenses incurred by the Receiver pursuant to this Order.

 

 

_____
United States District Judge

**Exhibit 1 to**

**Order Appointing Receiver and for Injunctive Relief**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

**EDUCATION CORPORATION OF AMERICA,**
**VIRGINIA COLLEGE, LLC, and NEW**
**ENGLAND COLLEGE OF BUSINESS AND**
**FINANCE, LLC,**

                    **Plaintiffs,**

                    **Civil Action No.**_____

      **v.**

**UNITED STATES DEPARTMENT OF**
**EDUCATION, and BETSY DEVOS, in her**
**official capacity as Secretary of Education,**

                    **Defendants.**

**KNOW ALL MEN BY THESE PRESENTS:**

      THAT I, Sean M. Harding, as Principal, and the _____, a

_____ corporation, as Surety, are held and firmly bound unto the U.S. District Court

for the Northern District of Alabama, as Obligee, in the penal sum of Ten Thousand and No/100

Dollars ($10,000), lawful money of the United States of America, for the payment of which, well

and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns,

jointly and severally, firmly by these presents.

      Whereas, in the above action and the above Court, Sean M. Harding, the Principal, has

been appointed Receiver of those certain assets identified in the Order attached hereto as Exhibit

A with authority and instructions and designated by the Court, and has been directed to give a

bond to Obligee in the sum aforesaid, according to law.

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall faithfully discharge the duties of the Receiver, and shall obey the orders of the Court therein, then this obligation shall be void; otherwise to remain in full force and virtue.

SIGNED AND SEALED this _____ day of October, 2018.


BY:_____
      Sean M. Harding


BY:_____
      _____, Attorney-in-Fact

3