FILED

2018 Oct-24  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

EDUCATION CORPORATION OF
AMERICA, *et al.*,

          Plaintiffs,

v.                                      Civ. No. 18-cv-01698-AKK

U.S. DEPARTMENT OF EDUCATION, *et al.*,

          Defendants

## UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR
## <u>APPOINTMENT OF A RECEIVER AND FOR INJUNCTIVE RELIEF</u>

## **TABLE OF CONTENTS**

STATUTORY AND REGULATORY BACKGROUND..........................................2

FACTUAL AND PROCEDURAL BACKGROUND .............................................3

ARGUMENT ...............................................................................................4

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS
      ACTION ...................................................................................................4
   A.   There is No Case or Controversy Between Plaintiffs and Education ...........5
   B.   Plaintiffs Lack Standing to Sue Education...................................................8
   C.   A Private Cause of Action Under the Higher Education Act Does
        Not Exist.....................................................................................................9

II.   THE COURT SHOULD NOT ISSUE AN INJUNCTION ..........................11
   A.   Injunctive Relief is Barred by the Anti-Injunction Act and Not Permitted
        by the All-Writs Act ..................................................................................12
   B.   Plaintiffs Are Not Likely to Succeed on the Merits of Their Declaratory
        Judgment Claim and So the Requested Injunction Should Not Issue as
        Support for That Claim...............................................................................14
   C.   Plaintiffs Cannot Establish Irreparable Harm ............................................16
   D.   The Public Interest Weighs Heavily Against Any Injunction....................21

III.  A RECEIVER SHOULD NOT BE APPOINTED.......................................23
   A.   Plaintiffs Lack Any Valid Substantive Claim Against Education .............23
   B.   The Standards for Appointing a Receiver Have Not Been Met.................24

CONCLUSION ......................................................................................................27

Plaintiffs have manufactured a dispute with the United States Department of Education (with defendant Secretary of Education Betsy DeVos acting in her official capacity, "Education") in an attempt to establish federal jurisdiction.  As narrowed by a stipulated Order, ECF No. 10 ("Stipulated Order"), Plaintiffs seek an injunction against third-party *creditors* (not Education) and propose a receivership that simulates bankruptcy protection.  Plaintiffs are not entitled either to an injunction or a receivership.  *First*, Plaintiffs cannot establish subject matter jurisdiction: a live dispute between Plaintiffs and Education does not exist; Plaintiffs' complained-of injury is traceable to third-party creditors and not Education; and the Higher Education Act ("HEA") does not provide Plaintiffs with a private cause of action.  *Second*, Plaintiffs are not entitled to a preliminary injunction against any party because they cannot establish a likelihood of success on the merits in the absence of subject matter jurisdiction, and also because the Anti-Injunction Act, 28 U.S.C. § 2283, precludes an injunction against state court proceedings under these circumstances.  Plaintiffs also fail to establish irreparable harm or that the public interest favors an injunction.  *Finally*, the Court should not establish a receivership because receiverships are ancillary remedies requiring additional grounds absent here.  For these reasons, the United States, on behalf of Education, respectfully submits this Opposition to Plaintiffs' motion for a

temporary restraining order and preliminary injunction (ECF No. 2) (the "Motion" or "Mtn.").[1]

## STATUTORY AND REGULATORY BACKGROUND

Title IV of the HEA establishes federal student financial aid programs through which the government forwards student loan proceeds to eligible higher education institutions.  *See* 20 U.S.C. § 1070(a).  To be eligible, an institution must meet the HEA Title IV definition of "institution of higher education," as defined in 20 U.S.C. §§ 1001, 1002.  To participate in Title IV programs, an institution must establish, *inter alia,* that it is authorized to operate in the state in which it is located; that it is accredited by a recognized accrediting agency; and that it is administratively capable and financially responsible.  *See id.* § 1099c.  To demonstrate financial responsibility, an institution must meet certain specified financial obligations and regulatory measures.  *See* 34 C.F.R. §§ 668.171-668.173. In the event that an institution ceases operations or faces possible loss of its licensure, accreditation, or certification, the institution must submit a teach-out plan specifying how students will be able to complete their degrees.  *See* 34 C.F.R. § 668.14(b)(31).

---

[1] Given the abbreviated timeframe for briefing these issues, the United States reserves the right to raise additional arguments in response to the Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are higher education institutions that receive Title IV funds.  ECF No. 1 ("Complaint" or "Compl.") ¶¶ 3-7, 13, 15.  Plaintiffs allege that years of declining enrollment at their institutions have generated significant revenue shortfalls and exacerbated their financial difficulties.  *Id.* ¶¶ 14, 20.  They also allege that landlords threaten to repossess real estate from which Plaintiffs operate. *Id.* ¶¶ 26-27; ECF No. 2-4.  On September 5, 2018, Plaintiffs informed the Department that they would be closing 26 locations but would teach out students enrolled at those locations, including those students who just began their programs in the Fall 2018 term.  *See* Declaration of Shari Mecca ("Mecca Decl.") ¶¶ 13-14 and Exh. B thereto; *see also* ECF No. 1-2 (listing teach-out schools).  Plaintiffs intend to sell the balance of the schools to a consortium of lenders referred to as the Monroe Lenders.  Compl. ¶ 33.

On October 16, 2018, Plaintiffs brought the instant action seeking injunctive relief and the appointment of a receiver.  The Complaint contains three counts. Count I seeks a declaration that Plaintiffs' restructuring plan and proposed receivership will not result in adverse determinations by Education under the HEA and related regulations.  *Id.* ¶¶ 42(a)-(b).  Count II seeks a blanket injunction closely resembling the automatic stay applicable in bankruptcy proceedings.  *See id.* ¶¶ 43-45; *see also* 11 U.S.C. § 362(a).  Count III seeks the appointment of a

receiver to oversee Plaintiffs' affairs, wind down the teach-out schools, and sell their other schools to the highest bidder. *Id.* ¶¶ 46-50.

In the Motion, Plaintiffs also seek the immediate appointment of a receiver and a long-term, bankruptcy-like stay of creditor actions to protect the receivership estate. Mot. at 11-15; ECF No. 2-1 (proposed receivership order). In the Stipulated Order, Plaintiffs agreed not to seek injunctive relief against the United States and to postpone consideration of their receivership request until the preliminary injunction hearing on October 29, 2018. *Id.* Following a hearing on October 18, 2018, the Court entered a temporary restraining order enjoining certain landlords (listed on a schedule Plaintiffs submitted to the Court) from asserting claims or other rights against Plaintiffs. ECF Nos. 12, 14. The injunction dissolves on October 29, 2018. ECF No. 12.

## ARGUMENT

## I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION

This Court lacks subject matter jurisdiction over the Complaint's claims, and on this ground all relief requested in the Motion should be denied. Plaintiffs have not alleged a case or controversy within the meaning of Article III; they lack standing to sue Education, because Education has not caused any of Plaintiffs' asserted injuries; and there is no private right of action under the HEA, which is the sole substantive statute under which Plaintiffs bring this action. "If the court

4

finds that it does not have subject matter jurisdiction, the court's sole remaining act is to dismiss the case for lack of jurisdiction." *Guevara v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) (internal quotation marks and citation omitted); *see also Underwriters at Lloyd's, London v. Osting–Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."). For this reason, the Court should determine whether it has subject matter jurisdiction before considering whether equitable relief is appropriate. *GOS Operator, LLC v. Sebelius*, 843 F. Supp. 2d 1218, 1222 n.7 (S.D. Ala. 2012).

## A.   There is No Case or Controversy Between Plaintiffs and Education

A plaintiff seeking "to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Declaratory Judgment Act[2] does not permit plaintiffs to bypass this core constitutional requirement. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937) (holding that declaratory judgment plaintiff still must establish a case or controversy under Article III). Jurisdiction under the

---

[2] The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Act requires a substantial and continuing controversy that is not conjectural, hypothetical, or contingent.  *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–48 (11th Cir. 1999).  The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests"; it must be "real and substantial"; and it must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*  A plaintiff seeking "a declaratory judgment has the burden of establishing the existence of an actual case or controversy."  *Id.* at 140 (internal quotation marks and citation omitted).

Plaintiffs have failed to allege any live dispute between the *named* parties (Plaintiffs and Education) and Education is unaware of any.  *See* Mecca Decl. ¶¶ 18-20.  Thus, this Court lacks the authority to grant any injunctive relief or appoint a receiver.  Lacking any real dispute, Plaintiffs seek to artificially construct one against Education by contending that they require a definitive construction, under the Declaratory Judgment Act, of certain provisions of the HEA and associated

regulations.  *See* Compl. ¶ 42(a)-(b).

But the Complaint lacks any allegation that Plaintiffs and Education disagree about the construction of the HEA or its implementing regulations.  For example, the Complaint (at ¶ 42(b)) refers to an HEA provision, 20 U.S.C. § 1099c, and Education's regulations relating to changes of control, 34 C.F.R. § 600.31(a)(1), but does not allege that Education has applied this statute or related regulation to any Plaintiff in a way that any of them considers contrary to law.  Moreover, Plaintiffs could challenge any decision about this issue through administrative proceedings,[3] and if still dissatisfied could seek judicial review of the final decision under the Administrative Procedure Act, 5 U.S.C. § 702.  Here, Education has not yet made any decision relating to Plaintiffs' status, much less a final one, and so any judicial consideration of this issue is not yet ripe.  *See Burr & Forman v. Blair*, 470 F.3d 1019, 1027 (11th Cir. 2006) ("*Blair*") ("The [All Writs] Act does not create subject matter jurisdiction for courts where such jurisdiction would otherwise be lacking.") (citation omitted).

While Plaintiffs name only Education as a defendant, the true targets of this litigation—as is evident from even a cursory read of Plaintiffs' proposed injunction, ECF No. 2-1—are Plaintiffs' creditors.  Education is a defendant in

---

[3] Education's regulations relating to loss of eligibility are set forth at 34 C.F.R. §§ 600.40-600.41.  Regulations governing its administrative procedure relating to loss of eligibility are set forth at 34 C.F.R. §§ 668.81-668.99.

name alone, and then only as a vehicle to establish federal jurisdiction.  The

Stipulated Order further demonstrates the absence of an actual controversy

between Education and Plaintiffs by including Plaintiffs' agreement not to seek

injunctive relief against the United States in this action.  Stipulated Order, ¶ 4(b)(i).

### B.    Plaintiffs Lack Standing to Sue Education

Because the Complaint fails to allege that Education *caused* Plaintiffs'

alleged injuries, they also lack standing to bring this action.  Constitutional

standing under Article III requires a plaintiff to "make three showings: (1) that she

has suffered an injury in fact . . . ; (2) that there is a causal connection between the

injury and the conduct complained of[,] i.e., the injury is fairly traceable to the

defendants' conduct; and (3) that it is likely that her injury will be redressed by a

favorable decision."  *Arnold v. Martin*, 449 F.3d 1338, 1341 (11th Cir. 2006)

(internal quotation marks and citation omitted).  "[A] federal court [may] act only

to redress injury that fairly can be traced to the challenged action of the defendant,

and not injury that results from the independent action of some third party not

before the Court."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42

(1976).

Here, third-party creditors, not Education, are allegedly causing Plaintiffs'

putative injuries.  Plaintiffs explain that their campuses are "presently the subject

of landlord actions to dispossess ECA . . . and to recover on alleged claims for

8

monetary judgments, which are ongoing, as well as other pending and threatened commercial and employment litigation and arbitration proceedings to which ECA is a party."  Mtn. at 13.  Plaintiffs sought the protection of the federal court principally to prevent injury (foreclosure and diminution in the value of their enterprise) arising from these state-court creditor actions.  Education has neither instituted nor threatened Plaintiffs with litigation.  Plaintiffs' injuries "result[] from the independent action of [] third part[ies] not before the Court."  *Simon*, 426 U.S. at 42.  Because Plaintiffs cannot establish the causation element of standing, they cannot establish federal jurisdiction.  *See Arnold*, 449 F.3d at 1341.

### C.  A Private Cause of Action Under the Higher Education Act Does Not Exist

Finally, the Court lacks subject matter jurisdiction because any dispute against Education by Plaintiffs would arise under the HEA, which does not provide a private cause of action in favor of Plaintiffs.  "Where, as here, a statute provides administrative remedies, there is a presumption that Congress did not intend to create a private right of action, but rather provided precisely the remedies it considered appropriate."  *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1222-23 (11th Cir. 2002).  The "federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."  *California v. Sierra Club*, 451 U.S. 287, 297 (1981).  And where a "private entity brings [a] suit for which no private cause of action has been provided, [the] district court lacks

subject matter jurisdiction." *Moore v. News Corp.*, No. 09-CV-2182, 2009 WL 5215407, at *2 (M.D. Fla. Dec. 30, 2009) (internal quotation marks and citation omitted).

Here, an "express or implied private right of action to enforce any of the HEA's provisions" does not exist. *McCulloch v. PNC Bank Inc.*, 298 F.3d at 1221 (acknowledging that "nearly every court to consider the issue in the last twenty-five years" has so concluded); *Ivey v. Duncan*, No. 13-CV-00576, 2016 WL 1452326, at *1 (D.D.C. Apr. 13, 2016) (concluding that the HEA provides no private right of action against Education); *Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F. Supp. 273, 278-80 (E.D. Pa. 1993) (finding no private right of action under the HEA against Education), *aff'd*, 37 F.3d 1491 (3d Cir. 1994).

Plaintiffs appear to argue that the limited sovereign immunity waiver in the HEA, *see* 20 U.S.C. § 1082(a)(2), authorizes their suit against the Secretary notwithstanding the absence of a private cause of action. Compl. ¶ 10. But courts have rejected this argument. *See Jackson v. Culinary Sch. of Washington*, 788 F. Supp. 1233, 1256 (D.D.C. 1992) ("Plaintiffs argue that the HEA contemplates suits against the Secretary for failure to fulfill his responsibilities under the Act. *See* 20 U.S.C. § 1082(a)(2). . . .  Upon further review, the Court concludes that the HEA does not furnish a basis upon which Plaintiffs can assert claims against the Secretary."); *Ivey*, 2016 WL 1452326, at *1.  Nor does the Declaratory Judgment

Act supply a freestanding basis for their HEA claims.  *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) ("We have long considered the operation of the Declaratory Judgment Act to be only procedural, leaving substantive rights unchanged.") (internal quotation marks and citation omitted); *Aetna Life Ins.*, 300 U.S. at 240 (holding that "the operation of the Declaratory Judgment Act is procedural only"); *Williams*, 836 F. Supp. at 281 (holding that permitting "plaintiffs to proceed in a declaratory judgment action with the HEA as the source of the underlying substantive law is tantamount to allowing a private cause of action").[4]

Because there is no live dispute between the parties, because Plaintiffs' purported injuries are traceable to third party creditors, and because Plaintiffs can avail themselves of no cause of action under the HEA, the Court lacks subject matter jurisdiction over—and therefore must dismiss—this action.  *See Underwriters*, 613 F.3d at 1092.

## II.    THE COURT SHOULD NOT ISSUE AN INJUNCTION

Here, even if the Court had subject matter jurisdiction over the Complaint's claims, Plaintiffs have not met the high standard for the issuance of a preliminary

---

[4] Additionally, Plaintiffs' declaratory relief claim is barred by 20 U.S.C. § 1082(a)(2).  Plaintiffs' request for declaratory relief, Compl. ¶ 42, is more properly construed as a request for injunctive relief against Education.  The sole consequence of a declaratory judgment in Plaintiffs' favor would be to require Education to refrain from undertaking certain action adverse to Plaintiffs.  Sovereign immunity has not been waived for such injunctive relief against Education.  *See* 20 U.S.C. § 1082(a)(2) ("[N]o attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control.").

11

injunction.  To obtain a preliminary injunction, a party must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  "These [last two] factors merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the[se] four requisites."  *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)).

### A.   Injunctive Relief is Barred by the Anti-Injunction Act and Not Permitted by the All-Writs Act

The Anti-Injunction Act, 28 U.S.C. § 2283, "prohibits federal courts from utilizing [their] authority to stay proceedings in state court unless the requirements of one of three narrow exceptions are met."  *Blair*, 470 F.3d at 1027.  Under the Anti-Injunction Act, a federal court may not halt a state court proceeding "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  "The Supreme Court has repeatedly emphasized that the lower courts are to interpret

these exceptions strictly." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1250 (11th Cir. 2006).

The All Writs Act, 28 U.S.C. § 1651(a)—which codifies "the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance," *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993)—is limited in the context of state court injunctions by the Anti-Injunction Act. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1103 n.16 (11th Cir. 2004) (requiring that All Writs Act and Anti-Injunction Act be read together in the context of injunctions against state court proceedings). "[I]n general, [a district court] may not enjoin state court proceedings to protect its ability to render judgment in ongoing *in personam* proceedings." *Id.* at 1102 (footnotes omitted). "The All Writs Act and the Anti-Injunction Act are closely related, and where an injunction is justified under one of the exceptions to the latter a court is generally empowered to grant the injunction under the former. . . . Thus, in assessing the propriety of an injunction entered to stop a state court proceeding, the sole relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act." *Blair*, 470 F.3d at 1027-28.

None of these narrow exceptions applies here. First, Congress has not "expressly authorized" an injunction against the state court proceedings at issue here. The second "necessary-in-aid-of-jurisdiction" exception is similarly

13

inapplicable.  It generally only applies (1) in an *in rem* proceeding where the federal court obtains jurisdiction over the *res* before the state court does or (2) in proceedings roughly analogous to *in rem* proceedings such as when enjoining the state court proceeding is necessary to protect a pre-existing federal court injunction.  *Blair*, 470 F.3d at 1028-29; *In re Bayshore*, 471 F.3d at 1250-51. Neither scenario pertains here.  Finally, the third exception, which authorizes federal courts to issue injunctions to "protect or effectuate its judgments," is facially inapplicable.  No judgment has been entered here, and so no res judicata concerns arise.  Because Plaintiffs' attempt to enjoin state court proceedings does not fall within a recognized Anti-Injunction Act exception, their requested injunction may not issue.

**B.** **Plaintiffs Are Not Likely to Succeed on the Merits of Their Declaratory Judgment Claim and So the Requested Injunction Should Not Issue as Support for That Claim**

The Declaratory Judgment Act is merely "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks and citation omitted).  As this Court has explained, "the decision to hear a declaratory judgment action is committed to the discretion of the district court."  *James River Ins. Co. v. Ultratec Special Effects, Inc.*, No. 16-CV-00949, 2017 WL 2652985, at *1 (N.D. Ala. June 20, 2017).  In exercising this discretion, courts "may take into consideration the speculativeness of the situation before them and the adequacy of

the record for the determination they are called upon to make, as well as other

factors, such as whether there is a pending procedure in state courts in which the

matters in controversy between the parties may be fully litigated. . . .  Unnecessary

interference with state court litigation should be avoided."  *Angora Enters., Inc. v.*

*Condo. Ass'n of Lakeside Vill., Inc.*, 796 F.2d 384, 387-88 (11th Cir. 1986)

(internal quotation marks and citation omitted).

Here, Count I's claim for declaratory relief is the only actual cause of action

alleged in the Complaint.[5]  Plaintiffs seek a declaration that (1) their proposed

restructuring plan will not interfere with their funding under the HEA "as provided

in 20 U.S.C. § 1001 et seq." and (2) appointment of a receiver does not constitute a

change in control under 34 C.F.R. § 600.31(a)(1).  But there is no evidence of a

disagreement between the parties on either of these issues: Plaintiffs have not

discussed these matters with Education staff, and Education has not reached even a

*tentative* conclusion about the contemplated restructuring.  No administrative

proceedings have taken place.  Mecca Decl. ¶ 15.  Thus, there is no "definite,

"concrete," "real," or "substantial" legal dispute.  *MedImmune*, 549 U.S. at 127.

Instead, Plaintiffs seek an "opinion advising what the law would be upon a

---

[5] There are only two other counts in Plaintiffs' complaint.  Count II seeks an injunction, but an "injunction is a remedy, not a separate cause of action."  *Advantor Sys. Corp. v. DRS Technical Servs., Inc.*, No. 14-CV-533, 2014 WL 3747667, at *4 (M.D. Fla. July 29, 2014).  Count III seeks appointment of a receiver, but that, too, is a remedy and not a cause of action. *See infra* 23.

hypothetical state of facts" (the *proposed* restructuring plan and the *requested* receivership).  *See id.*

The Court should not grant injunctive relief in support of such an implausible claim.  *See Wilton*, 515 U.S. at 287.  First, as explained above, the dispute is "speculative[]."  *Angora Enters.*, 796 F.2d at 387.  Plaintiffs had not consulted Education on these issues before this litigation.  Second, the "[in]adequacy of the record" supplies a further basis for declining to hear this action.  *Id.*  Neither the Complaint nor the Motion provide more than a paragraph or two regarding the illusory dispute between the parties over the construction of the HEA and its associated regulations.  (Plaintiffs' declarant does not discuss the dispute.)

Finally, and most importantly, the Eleventh Circuit has cautioned that courts should not employ the Declaratory Judgment Act to "interfere[] with state court litigation."  *Id.* at 388.  This principle applies both to existing and prospective state court litigation.  Plaintiffs' principal objective appears to be enjoining pre-existing and potential state court litigation against non-parties.  *See* Mtn. at 1-2, 12, 15.  The Declaratory Judgment Act should not be weaponized as a means to unnecessarily enjoin state court actions.

## C.     Plaintiffs Cannot Establish Irreparable Harm

Plaintiffs have the burden to demonstrate that irreparable harm is *likely* in the absence of an injunction; a mere *possibility* of harm is insufficient.  *See Winter*

16

*v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A party must also demonstrate that the harm is "neither remote nor speculative, but actual and imminent."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotations marks and citation omitted).  A harm that is fully compensable by monetary damages is not irreparable.  *See Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010).  The failure to establish irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."  *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (internal quotation marks and citation omitted).

Plaintiffs' apparent failure to pay their lease obligations apparently triggered the harm about which they express concern, but this harm is self-inflicted.  They have sufficient available cash, budgeted for that purpose, to make these payments. Declaration of Rhonda Puffer ("Puffer Decl.") ¶¶ 13-14 and Exhs. D-E.  Plaintiffs also recently represented to Education that they could meet their obligations to teach out students at the campuses they intended to close through the Fall of 2019 and that they then would have sufficient funds to continue operations at their remaining campuses.  Moreover, until mid-August 2018, Plaintiffs were seeking to purchase another chain of schools.  Mecca Decl. ¶¶ 12-14.  These representations and plans appear inconsistent with the Plaintiffs' claims of dire financial distress.

17

The core problem with Plaintiffs' assertions of irreparable harm, however, is that they have an adequate legal remedy: filing for bankruptcy. Although Plaintiffs recognize that a bankruptcy filing would imperil their access to Title IV funds, that does not make the remedy unavailable. "The critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another." *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x. 502, 503-04 (11th Cir. 2007). Congress designed the bankruptcy court as the forum to adjudicate the complex debtor-creditor issues at the center of this proceeding.[6] Plaintiffs seek to have it both ways: they want the benefits of bankruptcy (the bankruptcy stay and the centralized administration) without the burdens (the potential loss of federal funding). Given the existence of an alternative legal remedy here, Plaintiffs cannot establish irreparable harm.

Plaintiffs assert two types of purportedly irreparable harm: (1) the dissipation of assets as a result of ongoing litigation, and (2) harm to students due to disruption of the teach-out process. Mtn. at 23-24; Compl. ¶¶ 36-38. But neither of these alleged harms qualify as "irreparable harm." First, the costs of complying with the law and satisfying judgments do not constitute irreparable harm. *See IMS Health Inc. v. Sorrell*, 631 F. Supp. 2d 429, 432 (D. Vt. 2009)

---

[6] Congress also understood how to make certain entities *ineligible* for bankruptcy. *See* 11 U.S.C. § 109(b), (d). By allowing for-profit higher educational institutions to obtain bankruptcy relief, Congress demonstrated that it viewed bankruptcy as an adequate remedy for such entities struggling with debt.

("Spending money to comply with the law is simply a fact of doing business."); *cf. Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("injury resulting from attempted compliance with government regulation ordinarily is not irreparable harm."). Thus, complying with judgments and other court orders is not a harm that should be considered when weighing irreparable harm. "[I]t is also well settled that economic loss does not, in and of itself, constitute irreparable harm." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). As such, Plaintiffs' litigation costs are an economic loss that do not constitute irreparable harm. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012) ("Litigation costs are undoubtedly undesirable and may take funds away from other endeavors, but they are not an irreparable harm in the injunction calculus.").

Plaintiffs' argument that an injunction should issue to protect students proceeds from the false premise that student eligibility for Title IV funds is tied to an institution's specific location. When an institution closes or ceases providing educational programs, the institution becomes ineligible to continue participation in the Title IV programs. 34 C.F.R. § 668.26. But the students attending that institution do not lose their individual ability to receive loans from Education under Title IV. Indeed, under established practices, Education assists students in obtaining teach-outs from other institutions, and for students who cannot complete

a teach-out, Education grants discharges of their student loans.  20 U.S.C.
§ 1087(c)(1); 34 C.F.R. § 685.214(a).  Further, Title IV does not preclude an
institution from moving to a new location.  The only requirement regarding a
change of address is that the institution must notify the Department within 10 days
of the change.  34 C.F.R. § 600.21(a)(2).

Moreover, the putative harm to students is not relevant to the Motion's
request for injunctive relief because harms to third parties are not considered when
analyzing irreparable harm.  *See GOS Operator, LLC v. Sebelius*, No. 12-CV-0035,
2012 WL 175056, at *4 n.9 (S.D. Ala. Jan. 20, 2012) (citing *Osmose, Inc. v.
Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010)); *Moore v. Consol. Edison Co.
of New York*, 409 F.3d 506, 511 (2d Cir. 2005) (affirming that "the alleged harm to
third parties did not provide plaintiff a basis for a preliminary injunction" when
analyzing irreparable harm); *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d
321, 326 (D.D.C. 2018) (holding that injuries to third parties are not a basis to find
irreparable harm).  Accordingly, despite Plaintiffs' protestations that irreparable
harm will befall students in the event that Plaintiffs do not obtain relief in this
Court, any harm to students cannot be considered in the irreparable harm analysis.

Plaintiffs' failure to establish irreparable harm is an independent basis on
which to deny their request for injunctive relief.  *See Sampson*, 415 U.S. at 88.

### D.    The Public Interest Weighs Heavily Against Any Injunction

Plaintiffs' proposed injunction and receivership are inconsistent with the public interest, as this relief appears to be at odds with the remedies and constraints Congress has imposed on financially troubled schools receiving Title IV funding. The Higher Education Act requires the institutions to demonstrate on an ongoing basis that they meet financial responsibility standards that include providing educational programs for their students and paying their general financial obligations.  34 C.F.R. § 668.171(a).  Companies in distress that cannot meet Education's financial requirements for participating in Title IV programs may file for bankruptcy to obtain stays of actions by their creditors, 11 U.S.C. § 362(a), but any that do lose their continued eligibility for Title IV funding.  20 U.S.C. § 1002(a)(4)(A).  In enacting this provision, Congress expressed a concern that bankruptcy protection could otherwise permit "a school that cannot make loan refund payments to former students [to] continue to admit new students who in turn incur student loan obligations [even though that] . . . school may well close or otherwise cut back its educational program."  S. Rep. No. 102-58, at 19 (1991).

Eliminating bankrupt schools' eligibility for Title IV funding is needed to protect the federal fisc by stopping the flow of federal student aid funds to those institutions.  Shielding Plaintiffs from their creditors via an injunction equivalent to the Bankruptcy Code's automatic stay, 11 U.S.C. § 362(a), as a means of empowering them to avoid the HEA's consequences for filing bankruptcy, would

21

heighten the risk that Plaintiffs' students could obtain additional Title IV loans that Education may eventually be required to discharge.

Moreover, injunctive relief appears unnecessary to protect Plaintiffs' current students. First, by Plaintiffs' own admissions, some landlords provided concessions which should allow students attending certain locations to continue their studies. *See* Mecca Decl., Exh. C. Plaintiffs' students at 26 locations apparently may remain there through this academic year. *See* Mecca Decl. at ¶ 14.[7] In the event that some students cannot complete their studies, loan discharges are available. Although the ultimate drain on the federal fisc resulting from discharges is not likely to be as great as presented by Plaintiffs, the institution itself may have exacerbated the issue by enrolling new students in September 2018 at the same time it was failing to make required lease payments. *See* Mecca Decl. at ¶ 14.

Finally, the public interest would not be furthered by enjoining creditors from pursuing their legal remedies except to the extent Congress authorized and made automatic such an injunction in bankruptcies. *See* 11 U.S.C. § 362(a). Plaintiffs do not contest that they have defaulted on their leases or that the landlords have rights to pursue monetary judgments and evictions. Plaintiffs

---

[7] The list of current landlord-tenant litigation provided by Plaintiffs suggests that only one location, representing approximately 0.9% of Plaintiffs' student population, is currently at risk for potential eviction.

should not be permitted outside of bankruptcy to seek court relief to evade their own legal obligations to the detriment of creditors with legitimate claims.

## III.   A RECEIVER SHOULD NOT BE APPOINTED

The Court should deny the Motion's request for appointment of a receiver. It lacks subject matter jurisdiction, and this alone is sufficient reason to deny this remedy. *Supra* 4-11, 14-16.[8]  Moreover, receivership is not an appropriate remedy for the only substantive claim alleged in the Complaint, and the standards for appointment of a receiver have not been satisfied.

### A.   Plaintiffs Lack Any Valid Substantive Claim Against Education

A federal court may only appoint a receiver as an ancillary remedy to a valid substantive claim.   "A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself." *Gordon v. Washington*, 295 U.S. 30, 37 (1935); *see Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) ("[T]he appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action."); *Tucker v. Baker*, 214 F.2d 627, 632 (5th Cir. 1954) (holding that appointing a

---

[8] Courts lack power to appoint a receiver when they do not have subject matter jurisdiction. *See Fahey v. Calverley*, 208 F.2d 197, 200 (9th Cir. 1953) (holding that where a district court is "without jurisdiction, the receivership must necessarily fail"); *Connecticut Hous. Fin. Auth. v. Eno Farms Ltd. P'ship*, No. 07-CV-319, 2007 WL 1670130, *5 (D. Conn. June 6, 2007) ("Without jurisdiction, the court has no power over the parties, and thus the lack of subject matter jurisdiction would have rendered a receivership order void") (internal citation omitted).

receiver "is clearly inappropriate . . . for the reason that the receivership can accomplish no end, but must merely be an end in itself, if there is any reason for same."); *Garden Homes, Inc. v. United States*, 200 F.2d 299, 301 (1st Cir. 1952) ("[A] receivership is not an end in itself").

Application of these principles should prevent appointment of a receiver here. Plaintiffs have attempted to manufacture claims under the Declaratory Judgment Act to utilize the only real remedy they seek: a non-party injunction insulating them from their creditors. Plaintiffs' putative claims against Education are unrelated to this remedy, as evidenced by Plaintiffs' waiver of injunctive relief against the United States. *See* Stipulated Order ¶ 4(b)(i). As a receivership managing Plaintiffs' affairs is unrelated to the declaratory judgment action against Education, a receivership is not an appropriate remedy. *See Matter of McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994) ("[T]he primary consideration in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit.").

### B.      The Standards for Appointing a Receiver Have Not Been Met

Assuming arguendo that this Court has the power to appoint a receiver, receivership is still unwarranted here. "[T]he decision to appoint a receiver is an *extraordinary equitable remedy* that must only be granted when the interests of the parties are 'clearly at risk.'" *First Citizens Bank & Trust Co., Inc. v. Bacter Waste*

*Sols., LLC*, No. 16-CV-300, 2018 WL 1538883, at *3 (S.D. Ga. Mar. 29, 2018) (emphasis added); *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2983 (2d ed. 2008) ("[T]he appointment of a receiver is not a matter of positive right but rather lies in the discretion of the court.").

When assessing whether a federal equity receivership is appropriate, federal courts consider the following factors: "(1) the probability that fraudulent conduct has occurred or will occur; (2) the validity of the claim by the party seeking the appointment; (3) whether there is an imminent danger that property will be concealed, lost, or diminished in value; (4) the inadequacy of [alternative] legal remedies; (5) the lack of a less drastic equitable remedy; and (6) the likelihood that appointing the receiver will do more good than harm." *U.S. Bank Nat'l Ass'n v. LG-328 Huntsville, AL, LLC*, No. 17-CV-01378, 2017 WL 5668392, at *1 (N.D. Ala. Nov. 27, 2017) (Kallon, J.) (internal quotations marks and citation omitted) (denying request to appoint a receiver and noting that such remedy should be approached with caution); *see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir. 1993). Plaintiffs' proposed easy-to-meet standard for considering appointment of a receiver, *see* Mtn. at 11-12, cannot be squared with these strictures.

None of these relevant factors weigh in favor of receivership here, where Plaintiff has other remedies readily available to deal with creditors either through bankruptcy or on a case-by-case basis.  Plaintiffs do not allege that they are engaging in fraud, or that some fraudulent conduct affects their possession or value of their property.  Plaintiffs lack valid claims against Education.  Count I (for declaratory judgment) is the only claim alleged in the Complaint (and Counts II and III seek only remedies).  Declaratory judgment should not issue on Count I for reasons previously explained.  *Supra* 4-11, 14-16.   Actions by incumbent management are not the alleged cause for decline in asset values (a typical ground for receivership);[9] instead, non-party landlords and others enforcing their legal remedies are alleged to cause the decline.  Adequate legal and other less drastic remedies are available to address the problems described in the Motion: bankruptcy and the resulting automatic stay, *supra* 21, and retention of Sean M. Harding (without naming him as receiver) to assist Plaintiffs with managing their assets.  Lastly, the appointment of a receiver may do more harm than good by saddling Plaintiffs with possible unnecessary fees and expenses.

In short, the Court should not appoint a receiver because none of the relevant factors support such an appointment.

---

[9] *E.g.*, *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009) (considering the loss of value to collateral where owner could divert funds); *Resolution Trust Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 52 (N.D. Ohio 1992) (finding that damage would occur because the owners were failing to maintain the property).

26

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be denied because this Court lacks subject matter jurisdiction, an injunction should not issue, and a receiver should not be appointed.

Dated: October 24, 2018                              Respectfully Submitted,

JOSEPH H. HUNT                          /s/ Jonathan E. Jacobson
Assistant Attorney General              RUTH A. HARVEY
                                        KIRK T. MANHARDT
LANE H. WOODKE                          LLOYD H. RANDOLPH
ED RAGLAND                              DANIELLE A. PHAM
MARGARET MARSHALL                       JONATHAN E. JACOBSON
Assistant United States Attorneys       (Illinois Bar No. 6317721)
                                        Civil Division
                                        United States Department of Justice
                                        P.O. Box 875, Ben Franklin Station
                                        Washington, DC 20044-0875
                                        Telephone: (202) 353-7971
                                        Email: jonathan.e.jacobson@usdoj.gov

                                        Attorneys for the United States

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 24, 2018, a true and correct copy of the foregoing was served on plaintiffs via their counsel of record through the Court's Electronic Case Filing (ECF) system.

/s/ *Jonathan E. Jacobson*
Jonathan E. Jacobson

28