UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDUCATION CORPORATION OF AMERICA, et al., | ) ) ) |
| Plaintiffs, | ) ) Civil Action Number |
| vs. | ) **2:18-cv-01698-AKK** ) ) |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Education Corporation of America, Virginia College, LLC, and New England College of Business and Finance, LLC (collectively, "ECA") assert claims against the United States Department of Education and Betsy DeVos, in her official capacity as the Secretary of Education (collectively, the "DOE"), for declaratory and equitable relief. Doc. 1. In particular, as part of its efforts to keep operating its educational institutions, ECA seeks a declaration that a proposed restructuring plan will not interfere with its ability to participate in federal financial aid programs regulated by the DOE. *Id.* at ¶ 42. In addition, ECA filed an Emergency Motion for the Appointment of a Receiver and Entry of a Temporary Restraining Order and Preliminary Injunction. Doc. 2. Basically, ECA asks this court (1) to enter an order enjoining certain actions and lawsuits against ECA by its

creditors and (2) to appoint a receiver to take possession of ECA's assets and execute the restructuring plan. Doc. 1 at ¶¶ 44-50; *see also* doc. 2. Following an initial hearing on October 18, 2018, the court entered a stipulated order that, among other things, gave the DOE an opportunity to file a formal response to the motion. Doc. 10. The court also entered a temporary restraining order on October 19, 2018, staying and enjoining certain actions against ECA by its creditors to maintain the status quo until October 29, when the court held a second hearing on ECA's motion. Doc. 12. Immediately after the second hearing, the court extended its TRO by seven days, to allow it an opportunity to consider the parties' arguments. Doc. 38. As a result, the TRO is set to expire at 5:00 p.m. Central Time today.

The DOE opposes the motion and argues that the court does not have jurisdiction to hear this lawsuit. Doc. 19. Specifically, the DOE argues that there is no evidence before the court that ECA has submitted its restructuring plan to the DOE or that the DOE has rejected the plan. As such, the DOE maintains that there is no case or controversy as required by Article III for the court to have jurisdiction to hear this case. After careful consideration of the parties' briefs, docs. 2; 19; 24; 48; 51; 53,[1] and with the benefit of oral argument, the court concludes that ECA

---

[1] In addition to the parties' briefs, the court also considered the briefs and arguments submitted by several of ECA's landlords and other interested parties, *see* docs. 20, 25, 29, 32, 33, 35, 39, 42, 45, and other briefs that are not docketed and were sent to the court by electronic mail. Due to the unique and expedited nature of this action, the court allowed ECA's landlords

2

has not shown the existence of a case or controversy within the meaning of Article III, § 2 of the United States Constitution. As a result, the court does not have subject matter jurisdiction over ECA's claims, and this action is due be dismissed without prejudice.

I.     FACTUAL AND PROCEDURAL BACKGROUND

ECA operates colleges and career training schools at seventy-four campuses throughout the United States, including five campuses in Alabama. Docs. 1 at ¶¶ 3-6; 24-2 at ¶¶ 7, 10. To generate revenue, ECA depends upon tuition and fees from its students, most of whom receive federal student loans authorized under Title IV of the Higher Education Act ("HEA"). Docs. 1 at ¶¶ 13-15, 20; 24-2 at ¶¶ 17, 19-20. Thus, ECA's colleges and schools must remain eligible to participate in Title IV funding for ECA to maintain its revenue stream. *See* doc. 24-2 at ¶¶ 19-20, 35. The DOE regulates ECA's eligibility for Title IV programs, and ECA's participation in the programs requires DOE approval. Docs. 1 at ¶¶ 15-18; 19-1 at ¶¶ 5-8; 24-2 at ¶ 19.

Declining enrollment over several years has led to significant revenue shortfalls for ECA. The shortfalls caused ECA to default on many of its obligations, including its lease agreements, leading numerous landlords to institute

---

and other interested parties to participate in the October 29, 2018 hearing on ECA's motion without entering a formal notice of appearance or, for out-of-state counsel, seeking admission *pro hac vice* to this court.

or threaten eviction proceedings. *See* docs. 1 at ¶¶ 14, 20, 26; 24-2 at ¶¶ 20-21, 24-25, 32. ECA contends that it cannot seek protection by "a traditional bankruptcy filing" from these lawsuits because, under the HEA, a bankruptcy filing disqualifies an institution from participating in Title IV funding programs. Doc. 24-2 at ¶ 34; *see also* 20 U.S.C. § 1002(a)(4)(A).

Due to its financial difficulties, on September 5, 2018, ECA informed the DOE that it plans to close twenty-six of its schools and to teach-out the students currently enrolled at those schools. Docs. 19-1 at ¶ 14; 24-2 at ¶¶ 27-28; *see also* docs. 1 at ¶ 24; 19-1 at 12-13. After informing the DOE of its intention to close the teach-out schools, ECA developed a proposed "restructuring plan" that would provide financing to continue its operations in the short term and allow ECA to sell its remaining schools (the "go-forward schools") to a group of lenders. *See* docs 1 at ¶¶ 21, 33; 24-2 at ¶¶ 22, 30, 36. According to ECA, the lenders require the appointment of a receiver as a condition of their financing and purchase of the go-forward schools. Doc. 24-2 at ¶ 22.

During a phone call on October 10, ECA notified a representative of the DOE that it intended to seek a receivership. Docs. 19-1 at ¶ 18; 24-2 at ¶ 40. Although ECA inquired, the DOE representative refused to assure ECA that seeking the appointment of a receiver would not adversely impact ECA's eligibility to participate in Title IV funding programs. Doc. 24-2 at ¶ 40. Instead,

4

the individual informed ECA that it should not assume that the DOE will accept a receivership over ECA and that "ECA should proceed at its own risk." *Id.* ECA did not present evidence of further communication with the DOE regarding its proposed restructuring plan, or that it has presented its proposed plan to the DOE for consideration. *See* docs. 1; 2; 24.

Six days after the phone call, ECA filed this action against the DOE seeking a declaration in Count I that its proposed restructuring plan would not interfere with its ability to participate in Title IV funding programs and that the appointment of a receiver would not constitute a change in control under DOE regulations. In Counts II and III, respectively, ECA also seeks an order enjoining certain actions against ECA by its creditors[2] and an order appointing a receiver "to take possession of ECA's business and assets to oversee the administration of the closure of the Teach-Out Schools and to execute the [proposed] restructuring plan . . . ." *Id.* at 17-21. These last two counts seek remedies and are not substantive causes of action.

## II. **DISCUSSION**

Federal courts are courts of limited jurisdiction, and a federal district court must be satisfied that it can exercise jurisdiction over a claim before reaching the merits of the claim. *E.g., Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255,

---

[2] The injunctive relief sought in Count II is similar to the protection provided by the bankruptcy code's automatic stay provision. *See* 11 U.S.C. § 362.

1260-61 (11th Cir. 2000) (citations omitted). Therefore, because the DOE contends that the court lacks jurisdiction to hear this dispute, the court begins, as it must, with determining whether it has subject matter jurisdiction over this matter.

### A. Whether a Case or Controversy Exists

As the party seeking a federal forum, ECA bears the burden of proving the existence of subject matter jurisdiction. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citations omitted). To support its contention that the court has jurisdiction over its claims, ECA directs the court to § 1082(a)(2) of the HEA. Docs. 1 at ¶ 10; 24 at 3. This section provides that the DOE may "sue and be sued . . . in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy . . . ; but no attachment, injunction, garnishment, or other similar process [] shall be issued against the [DOE] . . . ." 20 U.S.C. § 1082(a)(2); *see also Bartels v. Alabama Commercial Coll., Inc.*, 54 F.3d 702, 707 (11th Cir. 1995) (finding that § 1082(a)(2) "provides the federal courts with an independent jurisdictional grant over cases involving the [DOE's] administration of the [Guaranteed Student Loan] program").

The DOE argues that, regardless of § 1082(a)(2), ECA must still show the existence of a case or controversy and that it has standing to pursue its claims

against the DOE.³ Doc. 19 at 6-11. Absent such a showing, the DOE maintains that the court lacks subject matter jurisdiction over this dispute. *Id.* Indeed, notwithstanding § 1082(a)(2), ECA's claim for declaratory relief must still satisfy Article III's case or controversy requirement for the court to exercise subject matter jurisdiction over the claim. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S. Ct. 2334, 2341 (2014) ("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'") (quoting U.S Const., Art. III, § 2); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937) (finding that the Declaratory Judgement Act's "limitation to 'cases of actual controversy'" authorizes relief only for claims that meet Article III's case or controversy requirement).⁴

To satisfy the case or controversy requirement, the alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' [] An allegation of future injury may suffice if the threatened injury

---

³ The doctrine of standing is inextricably intertwined with Article III's case or controversy requirement. *See Susan B Anthony List v. Driehaus*, 573 U.S. 149, 134 S. Ct. 2334, 2341 (2014); *Clapper v Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.") (quotation omitted). Based on the parties' arguments, the question whether ECA has standing to bring its claim boils down to one issue: whether ECA has alleged or shown an injury that is "'concrete, particularized, and actual or imminent . . . .'" *See Clapper*, 568 U.S. at 409 (quotation omitted); *see also* docs. 19; 24. Thus, the court addresses ECA's standing to bring its claim and the case or controversy requirement together.

⁴ The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and *Clapper*, 568 U.S. at 409). Additionally, in declaratory judgment actions, "where threatened action by government is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat . . . ." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (emphasis in original omitted).

Turning to the specifics here, ECA seeks a declaration, through Count I, that it remains eligible to participate in Title IV funding programs despite its proposed restructuring plan and request for the appointment of a receiver. Doc. 1 at ¶ 42. ECA argues its claim satisfies Article III's case or controversy requirement because the DOE "indicated to ECA the strong likelihood" that ECA would lose its eligibility to participate in Title IV programs if it seeks and obtains a receivership. Doc. 24 at 8-10. To support its argument, ECA presents the following evidence:

> During [an October 10, 2018] call, ECA requested DOE to confirm that the moving for the appointment of a receiver in federal court would not render ECA ineligible to participate under Title IV of the HEA and that the appointment of a receiver would not constitute a change of control under the HEA and its implementing regulations. ECA also notified DOE that it intended to seek the appointment of a receiver in federal court and explained that it perceived that the proposed scope of the receiver's authority would not constitute a change of control. ECA further explained that it had lined up financing to support the receivership process and allow the completion of full services for the Teach-Out Schools as well as the continued operation of the Go-Forward Schools. A representative of

8

> DOE stated at the end of the call that should ECA seek the appointment of a federal receiver, ECA should not take for granted that ECA would remain eligible to participate under Title IV of the HEA. He noted that DOE's acceptance of other state receiverships should not be taken to mean that DOE would accept a federal receivership over ECA and that DOE would not provide ECA with an answer to these direct questions. He stated emphatically that ECA should proceed at its own risk.

Doc. 24-2 at ¶ 40.[5] ECA contends that, based on this conversation, "ECA could only conclude [] that DOE would equate or construe the commencement of a receivership in federal court to a bankruptcy case [] or a change in control, thereby rendering ECA ineligible per se to participate under Title IV of the HEA." *Id.*; *see also* doc. 24 at 9. And, ECA argues that the law does not require it to "'bet the farm' by taking actions that could subject [it] to liability before obtaining a declaration of [its] rights." Doc. 24 at 9 (quoting *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1243 (10th Cir. 2008)).

ECA's contentions are unavailing. As an initial matter, *Surefoot LC v. Sure Foot Corporation*, which ECA cites, is distinguishable. *Surefoot* arose from a long-running trademark dispute between the parties. Surefoot LC filed a declaratory judgment action against Sure Foot Corporation, asking the district court to declare that it did not infringe the Corporation's trademark. 531 F.3d at 1239. The Tenth Circuit found that Surefoot LC's claim satisfied Article III's case

---

[5] The court may consider facts outside of the pleadings to determine if it has subject matter jurisdiction over an action. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

9

or controversy requirement based on evidence that Sure Foot Corporation (1) repeatedly accused Surefoot LC of infringing its trademarks, (2) threatened litigation if Surefoot LC did not change its name, (3) filed a proceeding before the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB") to cancel Surefoot LC's trademark, and (4) filed five proceedings before the TTAB to oppose Surefoot LC's pending trademark applications. *Id.* at 1244-45. No similar evidence exists in this case. Instead, the DOE representative only refused to respond to or provide assurances about ECA's proposed restructuring plan during the course of a single phone call, and ECA did not provide the court with evidence that it had more discussions with the DOE about the restructuring plan after that call. *See* doc. 24-2 at ¶ 40. Simply put, the single call, as described, is not sufficient to show that the parties have an actual, concrete, or substantial dispute about ECA's proposed restructuring plan, or that ECA faces a substantial risk of injury if it proceeds with its plan.

Next, while ECA is correct that a party does not need to expose itself to liability before bringing a declaratory judgment action to challenge "threatened action by [the] government," *see MedImmune, Inc.*, 549 U.S. 128-29, noticeably missing here is any allegation that the DOE has threatened any action against ECA. At best, the complaint alleges only that an unknown employee at DOE refused to respond to ECA's single verbal request for information and assurances about

ECA's continued eligibility for Title IV programs in light of the proposed restructuring plan. *See* doc. 24-2 at ¶ 40. Moreover, ECA does not assert that the DOE has historically found schools ineligible to participate in Title IV programs if they seek a receivership. *See generally* docs. 1; 2; 24. In fact, ECA admits that the DOE has allowed receiverships in the past. *See* doc. 24-2 at ¶ 33. In that respect, this case is materially different from those in which the Supreme Court found a declaratory judgment claim challenging potential government action satisfied Article III's case or controversy requirement. *See e.g., Susan B. Anthony List*, 134 S. Ct. at 2345-46 (holding that the threat of government action created an injury for purposes of Article III when there was a history of past enforcement of the law at issue and an agency found probable cause to believe the petitioner's action violated the law); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (holding that a petitioner's pre-enforcement declaratory judgment claim satisfied the case or controversy requirement when the police twice threatened to arrest the petitioner for his actions and had arrested another individual who did not stop the action at issue).

In the absence of any allegation that the DOE threatened to take any action against ECA in response to the proposed restructuring plan, or that the DOE has historically found schools ineligible for Title IV funding if they seek a receivership, the court is left with speculation or conjecture in attempting to determine how the DOE would respond to ECA's restructuring plan. This is far

different from the "'concrete and particularized' and 'actual or imminent'" injury required for a finding that a case or controversy exists. *See Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Lujan*, 504 U.S. at 560). Consequently, ECA has not shown that a potential decision finding ECA ineligible to participate in Title IV funding programs is "'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Id.* Instead, ECA has shown just a possibility of future injury, which is insufficient to satisfy Article III's case or controversy requirement. *See Georgia Republican Party v. Sec. and Exch. Comm'n*, 888 F.3d 1198, 1202 (11th Cir. 2018) ("[T]he Supreme Court has 'repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.'") (quoting *Clapper,* 568 U.S. at 409) (internal quotation marks, alterations, and emphasis omitted). As a result, the court is without subject matter jurisdiction over ECA's claims and must dismiss this action. *See Guevara v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) ("If the court finds that is does not have subject matter jurisdiction, 'the court's sole remaining act is to dismiss the case for lack of jurisdiction.'") (quotation omitted).

  **B.** **Whether ECA Has Met its Burden of Showing That it is Entitled to Relief**

Alternatively, to the extent the court is in error on the jurisdiction issue, the lawsuit is also due to be dismissed because the HEA does not provide a private

right of action. *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002). ECA's argument that it is asserting a claim under the Declaratory Judgment Act instead of under the HEA, *see* doc. 24 at 5, is a distinction without form. The Declaratory Judgment Act is procedural and does not impact a party's substantive rights. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (citation omitted); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only."). Thus, a plaintiff cannot assert a claim under the Declaratory Judgment Act in an attempt to enforce a statute that does not provide a private right of action. *See Alabama v. United States*, 198 F. Supp. 3d 1263, 1268-73 (N.D. Ala. 2016) (dismissing the state's claim for relief under the Declaratory Judgement Act for alleged violations of the Refugee Act because the Refugee Act does not provide a private right of action). *See also Williams v. Nat'l School of Health Technology*, 836 F. Supp. 273, 281 (E.D. Pa. 1993) (holding that the plaintiffs could not assert a declaratory judgment claim against the DOE to enforce the HEA because there is no private right of action under the HEA).

Finally, entry of a preliminary injunction and the appointment of a receiver are "extraordinary and drastic" remedies that must be employed with caution. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989).

Specifically, a preliminary injunction must "not [] be granted unless the movant clearly establishes, the 'burden of persuasion' as to the four requisites," *All Care Nursing Serv., Inc.*, 887 F.2d at 1537 (quotation omitted), i.e., "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest," *Winter v. Nat'l Res. Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted). The last two "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). In this case, ECA cannot show a likelihood of success on the merits because there is no private right of action under the HEA. *See* pp. 12-13, *supra*. Also, in light of the public policy reflected in Congress's decision to exclude schools that have filed for bankruptcy from eligibility for Title IV funding, *see* 20 U.S.C. § 1002(a)(4)(A), ECA has not shown that an injunction is in the public interest.[6]

Similarly, ECA has not shown that the appointment of a receiver is justified here. "[F]ederal courts consider a number of factors regarding the propriety of

---

[6] A 1991 senate report regarding abuses in federal student aid programs notes a concern that "[b]y securing the protection of the bankruptcy court, which has an interest in seeing that the schools survive through reorganization, even a school that cannot make loan refund payments to former students may continue to admit new students who in turn incur student loan obligations even though that school may well close or otherwise cut back its educational program." S. Rep. No. 102-58, 19 (1991) (alterations in original omitted). The report also "acknowledges that the Congress and the [DOE] have [] instituted a number of important measures [to reform the Guaranteed Student Loan Program], including: . . . eliminating the bankruptcy recourse used by schools trying to escape adverse action by accreditation agencies . . . ." *Id.* at 34.

establishing a receivership, including '(1) the probability that fraudulent conduct has occurred or will occur;' (2) the validity of the 'claim by the party seeking the appointment;' (3) whether there is an 'imminent danger that property will be concealed, lost, or diminished in value;' (4) the 'inadequacy of [alternative] legal remedies;' (5) the 'lack of a less drastic equitable remedy;' and (6) the 'likelihood that appointing the receiver will do more good than harm.'" *U.S. Bank Nat'l Ass'n v. LG-328 Huntsville, AL, LLC*, No. 17-cv-01378-AKK, 2017 WL 5668392, *1 (N.D. Ala. Nov. 27, 2018) (citations omitted). Just as ECA's failed to show a likelihood of success on the merits and that an injunction would be in the public interest, *see* p. 14, *supra*, the second and sixth factors here weigh strongly against the appointment of a receiver. Also, there is no appearance of fraudulent conduct, a factor which typically weighs against the appointment of a receiver. *See U.S. Bank Nat'l Ass'n*, 2017 WL *3 (citing *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2nd Cir. 1988); *Gordon v. Washington*, 295 U.S. 30, 37 (1935)). ECA suggests that the court should find instead that the absence of fraud weighs in favor of the appointment of a receiver in this case because ECA is the party seeking the receivership. Doc. 2 at 11-12. However, ECA did not cite any case in which a plaintiff sought a federal receivership to protect the plaintiff's interests in its own assets, *see* docs 2; 24; 48,[7] and the court has found no such case.

---

[7] ECA provided the court with a case from the Circuit Court for the County of St. Louis, Missouri, *In re Vatterott Educational Centers, Inc.*, Case No. 17SC-CC02316, in which Vatterott

15

## III. CONCLUSION

Where, as here, ECA has failed to meet its burden of showing an actual threatened injury from the DOE that is "concrete and particularized" and "actual and imminent," *Lujan*, 504 U.S. at 560 (citations omitted), there is no case or controversy. As such, the court lacks subject matter jurisdiction over ECA's claims, and this action is due to be dismissed. A separate order dismissing this action without prejudice will be entered. Finally, because the court concludes it is without jurisdiction, it does not address Pioneer Industrial LLC and Pioneer Parking Lot, LLC's motion for joinder, doc. 35; Southern Plaza, LLC's motion to intervene and motion for leave, docs. 42 and 43; the Southern Poverty Law Center's motions for leave to appear *pro hac vice*, docs. 55 and 56; and ECA's request that the court extend the temporary injunction for a few more days to give ECA an opportunity to assess its options.

**DONE** the 5th day of November, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

Educational Centers, Inc. sought and received the appointment of a receiver to protect its own financially-troubled schools. *See* Doc. 53-2. The *Vatterott* case is distinguishable because Vatterott brought the case in state court pursuant to a state statute that provides that "[t]he appointment of a receiver is not required to be relief ancillary or in addition to any other claim, and may be sought as an independent claim and remedy." Mo. Stat. § 515.510(6). No similar statute applies in this case. Instead, as mentioned previously, the appointment of a federal receiver is only an ancillary remedy, not a substantive cause of action. *See Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (citation omitted).